**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **INTERCURRENCY SOFTWARE LLC**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**AIRWALLEX (SINGAPORE) PTE. LTD.**<br><br>                    **Defendant.** | Case No. 2:24-cv-1011-JRG |

**DEFENDANT AIRWALLEX (SINGAPORE) PTE. LTD.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,
<u>FAILURE TO STATE A CLAIM, AND IMPROPER SERVICE</u>**

<u>**T**ABLE OF **C**ONTENTS</u>

<u>**Pages**</u>

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF THE ISSUES.......................................................................... 2

III.    FACTUAL BACKGROUND ............................................................................... 3

    A.      Airwallex Singapore Has No Contacts With This Forum ................................ 3

    B.      Plaintiff's Deficient Infringement Allegations ...................................... 4

    C.      Plaintiff's Failure to Serve Airwallex Singapore ................................... 6

IV.     LEGAL STANDARD ........................................................................................ 7

    A.      Lack of Personal Jurisdiction........................................................................ 7

    B.      Failure to State a Claim............................................................................... 8

    C.      Improper Service ........................................................................................ 9

V.      ARGUMENT .................................................................................................. 10

    A.      This Court Does Not Have Personal Jurisdiction Over Airwallex
        Singapore ................................................................................................ 10

        1.      Airwallex Singapore is Not Subject to General Jurisdiction
             Because it is Not At Home in Texas........................................... 10

        2.      Airwallex Singapore is Not Subject to Specific Jurisdiction
             Because it has No Minimum Contacts with Texas ................................ 11

        3.      Personal Jurisdiction in Texas Over Airwallex Singapore Would be
             Unreasonable and Unfair ............................................................. 15

    B.      The Complaint Does Not State a Claim for Patent Infringement ...................... 16

        1.      The Complaint is Devoid of Specific Factual Allegations of
             Infringement................................................................................. 16

        2.      Plaintiff's Complaint Does Not Make Out a Plausible Claim ................. 17

        3.      The Complaint Improperly Parrots Claim Language.............................. 19

        4.      Plaintiff's Own Allegations are Inconsistent with Infringement ............. 20

    C.      Plaintiff Failed to Properly Serve Airwallex Singapore in the Manner
        Required for Foreign Corporations.................................................................... 21

        1.      Plaintiff's Service on Airwallex Singapore Through Airwallex US
             was Defective Because it Failed to Follow the Hague Service
             Convention.................................................................................... 21

        2.      Plaintiff's Service on Airwallex Singapore "c/o Airwallex US,
             LLC" is Defective Under California Law............................................... 22

        3.      Plaintiff's Pattern of Avoiding Proper Service Warrants Dismissal........ 23

VI.     CONCLUSION................................................................................................. 24

## TABLE OF AUTHORITIES

### Cases

*Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*,
635 F.2d 434 (5th Cir. 1981) ................................................................. 10

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*,
480 U.S. 102 (1987) ................................................................. 15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 9

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) ................................................................. 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 9

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994) ................................................................. 14

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ................................................... 2, 9, 10, 17, 20

*Celgard LLC v. SK Innovation Co.*,
792 F.3d 1373 (Fed. Cir. 2015) ................................................................. 14

*Chapterhouse, LLC v. Shopify, Inc.*, No.
2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ........................... 18, 19

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
No. 6:14-cv-751-JDL, 2015 WL 5000397 (E.D. Tex. Jun. 3, 2015) ................................. 18

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................. 1, 8, 11, 12

*Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*,
No. 6:11-cv-34-LED-JDL, 2011 WL 13223466 (E.D. Tex. Sept. 29, 2011) ....................... 19

*Gen. Motors Corp .v. Super. Ct.*,
15 Cal. App. 3d 81 (1971) ................................................................. 23

*Grober v. Mako Prods., Inc.*,
686 F.3d 1335  (Fed. Cir. 2012). ................................................................. 8

*Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*,
898 F.2d 1071 (5th Cir. 1990) ................................................................. 16

*Hutchings v. MSHC Bonner St. Plaza LLC*,
No. 2:12-CV-00074-JRG-RSP, 2012 WL 3150824 (E.D. Tex. Aug. 2, 2012) ..................... 16

*In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012). ................................................................. 9

*Infogation Corp. v. BMW of North Am., LLC*,
Case No. 2-2024-cv-00304 (E.D. Tex.) ................................................................. 7

*Intercurrency Software LLC v. Foris DAX Asia Pte. Ltd.*,
  No. 2:23-cv-00361-JRG (E.D. Tex.) ................................................................... 24

*Intercurrency Software LLC v. Wise PLC*,
  No. 2:24-cv-00976-JRG (E.D. Tex.) ................................................................... 24

*Landmark Tech LLC v. Aeropostale*,
  No. 6:09-CV-262, 2010 WL 517495 (E.D. Tex. Mar. 29, 2010) ........................ 20

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ........................................................................... 9

*Lozano v. Bosdet*,
  693 F.3d 485 (5th Cir. 2012) ............................................................................. 24

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009). .............................................................................. 8

*McIntyre Mach. Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ........................................................................................... 14

*Monkton Ins. Servs. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ............................................................................... 8

*NexLearn LLC v. Allen Interactions, Inc.*,
  859 F.3d 1371 (Fed. Cir. 2017) ................................................................. 8, 9, 13

*Nuance Commc'n's, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ........................................................................... 8

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987) ............................................................................................. 10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ........................................................................... 7, 12

*Princeton Digit. Image Corp. v. Facebook, Inc.*,
  No. 2:11-CV-400-JRG, 2012 WL 3647182 (E.D. Tex. Aug. 23, 2012) ................ 7

*Realtime Data LLC v. Stanley*,
  721 F. Supp. 2d 538 (E.D. Tex. Jun. 10, 2010) .................................................. 20

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
  No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. Jun. 28, 2016) .............. 18

*Tech. Pats. LLC v. Deutsche Telekom AG*,
  573 F. Supp. 2d 903 (D. Md. 2008), *aff'd sub nom. Tech. Pats. LLC v. T-Mobile (UK) Ltd.*,
  700 F.3d 482 (Fed. Cir. 2012) ........................................................................... 14

*Thomas v. Takeda Pharms. USA, Inc.*,
  No. 1:16-CV-01566-LJO-EPG, 2017 WL 2214956 (E.D. Cal. May 19, 2017) .............. 23

*Traxcell Techs. LLC v. Nokia Sols. and Networks US LLC*,
  No. 2:18-CV-00412-RWS-RSP, 2019 WL 8137134 (E.D. Tex. Oct. 22, 2019) ........... 22, 23

*TriOptima AB v. Quantile Tech. Ltd.*,
  2:19-cv-00390-JRG, 2020 WL 11613655 (E.D. Tex. Nov. 30, 2020). .............. 1, 14, 15

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988).......................................................................................... 10

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)............................................................................................ 7

**<u>Statutes</u>**

Cal. Code. Civ. P. § 416.10.................................................................................... 26

Fed. R. Civ. P. 4(f)(1) ........................................................................................... 11

Fed. R. Civ. P. 4(f)(3) ........................................................................................... 11

Fed. R. Civ. P. 4(h) ............................................................................................... 11

Fed. R. Civ. P. 4(m) .............................................................................................. 12

Fed. R. Civ. P. 12(b)(2).......................................................................................... 1, 2

Fed. R. Civ. P. 12(b)(5).......................................................................................... 1, 3, 12

Fed. R. Civ. P. 12(b)(6).......................................................................................... 1, 3, 19

**<u>Other Authorities</u>**

Airwallex US LLC Website .......................................................................... 4, 13, 14, 15

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents .... 2, 7, 12, 25

State of California Department of Financial Protection & Innovation ........................... 7

## I.    INTRODUCTION

Airwallex (Singapore) Pte. Ltd. ("Airwallex Singapore") respectfully requests that the Court dismiss this case in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(b)(5).  Across the board, Plaintiff has failed to comply with the basics of these Federal Rules.  Plaintiff (i) ignored personal jurisdiction requirements by suing a Singapore entity, located in Singapore, with no U.S. customers; (ii) flouted pleading standards by basing its entire four-patent case on one screenshot with no further explanation; and (iii) made no attempt to properly serve process.  The Complaint is woefully deficient and should be dismissed.

First, the Complaint does not get off the starting line.  Plaintiff seeks to haul Airwallex Singapore into this forum without providing any nexus to Texas.  It is undisputed that Airwallex Singapore is incorporated and has its principal place of business abroad, which the Supreme Court has held forecloses the exercise of general jurisdiction over an entity.  Dkt. 1 ¶ 2; *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).  And none of Plaintiff's allegations for specific jurisdiction satisfy suit-related conduct to create minimum contacts with Texas.  To the contrary, the declaration of Justin Yek, a director of Airwallex Singapore, confirms that Airwallex Singapore (i) has no customers incorporated or headquartered in the United States, let alone Texas, and (ii) lacks the licenses and registrations to even perform the accused financial transactions in Texas.  Plaintiff's boilerplate allegations do not, and cannot, demonstrate that Airwallex Singapore purposefully directed any activities into Texas sufficient to subject it to this Court's jurisdiction.  *See TriOptima AB v. Quantile Tech. Ltd.*, 2:19-cv-00390-JRG, 2020 WL 11613655, at *5-6 (E.D. Tex. Nov. 30, 2020).

Second, the Complaint is equally deficient on the merits; the substantive allegations are patently deficient to make out a plausible infringement claim.  Despite asserting four patents in

this case, Plaintiff's entire Complaint is supported by a *single website screenshot*.  That is all.  It pleads no factual allegations that "articulate why it is plausible that the accused product infringes the patent claim[s]."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). Instead, the Complaint simply parrots the claim language without attempting to identify how or why any specific product, hardware, method, or functionality would plausibly meet the limitations of any asserted claim.  Plaintiff's Complaint falls well short of the applicable pleading standard.

Third, Plaintiff has not attempted to serve Airwallex Singapore with process in accordance with the Hague Service Convention ("Hague Convention").  Plaintiff served CT Corporation instead, a California-based agent of a *different* entity that is not even a named party to this case. Dkt. 4.  Plaintiff's failure to effect proper service warrants dismissal.

Accordingly, the Court should dismiss all of Plaintiff's claims against Airwallex Singapore with prejudice.

## II.    STATEMENT OF THE ISSUES

This Court should dismiss this case with prejudice pursuant to:

- Fed. R. Civ. P. 12(b)(2)—because it cannot exercise personal jurisdiction over Airwallex Singapore, a company located in Singapore with no contacts, much less the constitutionally required minimum contacts, with the State of Texas.

- Fed. R. Civ. P. 12(b)(6)—because the Complaint fails to plead *any* factual allegations sufficient to create a plausible infringement claim and merely parrots the Asserted Patents' claim language.

- Fed. R. Civ. P. 12(b)(5)—because Plaintiff has not served Airwallex Singapore and has made no attempt to properly do so.

III.    **FACTUAL BACKGROUND**

A.    **Airwallex Singapore Has No Contacts With This Forum**

Airwallex Singapore is located in Singapore and organized under Singapore laws. Declaration of Justin Yek ("Decl.") ¶ 3; *see also* Dkt. 1 ¶ 2.  Airwallex Singapore offers its customers products like multi-purpose bank accounts, international money transfer payment services, business expense management, and multi-currency payment cards.  Decl. ¶ 6.  It does not offer brokerage or securities trading services, and it is not an investing platform.  *Id.* ¶ 7.

Airwallex Singapore has no physical locations in Texas (or any other State), and does not rent or own any land or physical property in Texas.  Decl. ¶ 4.  Airwallex Singapore is not licensed or registered to conduct business in the U.S., let alone Texas  *Id.* ¶¶ 5, 12.  Specifically, Airwallex Singapore (i) has no employees anywhere in the U.S., (ii) is not incorporated anywhere in the U.S., (iii) has no headquarters or offices anywhere in the U.S., and (iv) does not have a telephone number in the United States.  *Id.* ¶ 5.

Plaintiff accuses a product vaguely referenced as "FX & Transfers platforms and systems" ("FX Platform").  Dkt. 1 ¶ 30.  No portion of the accused FX Platform is located in Texas.  Decl. ¶ 10.  Rather, servers hosting the FX Platform are located entirely outside of Texas.  *Id.*  The FX Platform is not generally accessible to the public in Texas, and is instead a service sold exclusively in a business-to-business setting.  *Id.*

Airwallex Singapore has never made, sold, offered for sale, or imported the accused FX Platform into Texas or anywhere in the United States.[1]  Decl. ¶ 9.  None of Airwallex Singapore's customers are incorporated or headquartered in the United States, let alone Texas.  *Id.* ¶ 11.

---

[1] Airwallex Singapore does not make or sell physical products anywhere in the world, and necessarily has never sold any physical products in or into Texas.  Decl. ¶ 9.

Airwallex Singapore is licensed in Singapore—not the U.S.—as a financial payment institution, and is regulated by the Monetary Authority of *Singapore*.  *Id.* ¶¶ 3, 12.  Only Airwallex US LLC ("Airwallex US")—a separate entity that is not a party to this case—has license and registration to do business in Texas, including to execute the financial transactions performed by the FX Platform and accused in this action.  *Id.* ¶ 12 (citing https://www.airwallex.com/us/state-licenses).  U.S. customers contract with Airwallex US in order to obtain access to, and use, the accused FX Platform in the United States, including in Texas.  *Id.*  Airwallex US, not Airwallex Singapore, manages and operates the website https://www.airwallex.com/us.  *Id.* ¶ 13.

Airwallex Singapore is neither a parent entity to, nor a subsidiary of, Airwallex US.  Decl. ¶ 14.  Airwallex Singapore does not have control over the day-to-day business operations of Airwallex US, and the two entities are separate companies that maintain separate books and accounting and file taxes separately.  *Id.*

### B.    Plaintiff's Deficient Infringement Allegations

Premised solely "[u]pon information and belief," Plaintiff alleges that Airwallex Singapore infringes the Asserted Patents[2] when it "makes, sells, advertises, offers for sale, uses, or otherwise provides an apparatus and method for a consolidated trading platform covered by the Patents-in-Suit, including its FX & Transfers platforms and systems, as represented below, including all augmentations to these platforms or descriptions of platforms."  Dkt. 1 ¶ 30.  The FX Platform "represented below" in the Complaint consists of a single screenshot from the Airwallex US website that purports to offer "[f]ast, cost-effective international money transfer services" that can

---

[2] Plaintiff asserts U.S. Patent Nos. 10,062,107 ("the '107 Patent"); 10,776,863 ("the '863 Patent"); 11,449,930 ("the '930 Patent"); and 11,620,701 ("the '701 Patent") (collectively, "Asserted Patents").

"[s]treamline sending payments abroad to suppliers and employees around the world, and access market-leading international FX rates no matter the transaction size." *Id.* No other factual evidence is included or alleged in Plaintiff's Complaint:



Regarding the '107 Patent, Plaintiff does not plead *how or why* any accused product allegedly practices the claim limitations. Instead, the Complaint parrots some, but not all, of the limitations of claim 1. Dkt. 1 ¶ 35. For the '863, '930 and '701 Patents, Plaintiff alleges even less. For the claims of these three separate patents, Plaintiff alleges only that "Defendant provides a trading server, such as the Defendant trading servers coupled to one or more currency exchange servers, such as Defendant servers, and one or more market exchange servers." *Id.* ¶¶ 51, 67, 83. Plaintiff pleads no other details in the Complaint to specify what specific product, hardware, software, or method allegedly infringes, or any basis for the belief that infringement has occurred.

Regarding the Asserted Patents, Plaintiff alleges that "the invention relates to methods, processes and systems for conducting security transactions" that include "a brokerage" and "a market exchange where securities/assets are traded. . . ." Dkt. 1, ¶¶ 17-18. This provides the

alleged benefit that "a trader always knows exactly what he/she may end up with a transaction of an asset." *Id.* ¶ 19.  Plaintiff alleges that the patents cover "a consolidated trading platform" (*id.* ¶ 30) that includes a "trading server" that receives "an indicator of a preferred currency from a trader."  However, Plaintiff's description of the accused products is not tied to any form of trading service or security transaction at all, and instead alleges the accused product is simply a payment system designed to "[s]treamline sending payments abroad to suppliers and employees around the world." Dkt. 1, ¶ 30 (*see* Screenshot).  Airwallex Singapore does not offer brokerage or securities trading services, and is not an investing platform.  Decl. ¶ 7.

### C.    Plaintiff's Failure to Serve Airwallex Singapore

Airwallex Singapore is located and organized in Singapore.  Singapore signed the Hague Convention on May 16, 2023, and the Convention entered into force in Singapore on December 1, 2023.[3]  However, Plaintiff never sought to utilize the Hague Convention, or serve Airwallex Singapore at all.

Instead, Plaintiff filed an executed summons with this Court showing that a company named "Infogation Corporation" purportedly served CT Corporation in California on January 23, 2025.[4]  Dkt. 4.  CT Corporation is not a registered agent for Airwallex Singapore.  Even assuming "Infogation Corporation" was intended to be "Intercurrency Software," the recipient of service is the registered agent of *Airwallex US*, which is located in San Francisco, California.[5]  The executed

---

[3] *See* Hague Conference on Private International Law, *Singapore Accedes to the Service Convention* (May 16, 2023), https://www.hcch.net/en/news-archive/details/?varevent=91.

[4] "Infogation Corporation" is a company unrelated to either party.  It seems to be copied from a previous client of Plaintiff's counsel in *Infogation Corp. v. BMW of North Am., LLC*, Case No. 2-2024-cv-00304 (E.D. Tex.).

[5] *See* State of California Department of Financial Protection & Innovation, https://dfpi.ca.gov/regulated_entity/airwallex-us-llc/ (last visited Mar. 31, 2025).

6

summons purports to serve Airwallex Singapore "c/o Airwallex US, LLC."  Dkt. 4.  Airwallex US and Airwallex Singapore are separate companies and do not maintain a parent-subsidiary relationship.  Decl. ¶ 14.  To date, Plaintiff has made no attempt to serve Airwallex Singapore.

## IV.    LEGAL STANDARD

### A.    Lack of Personal Jurisdiction

The Court must dismiss a case when it lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  The requirement that a plaintiff establish the court's personal jurisdiction "protects the defendant against the burdens of litigating in a distant or inconvenient forum" with which it has little or no contact.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

"[T]he plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Princeton Digit. Image Corp. v. Facebook, Inc.*, No. 2:11-CV-400-JRG, 2012 WL 3647182, at *2 (E.D. Tex. Aug. 23, 2012) (citations omitted).  However, the Court need not "credit conclusory allegations, even if uncontroverted."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  Jurisdictional allegations upon "information and belief" with no other evidence are merely conclusory and need not be credited.  *Id.*

In patent cases, Federal Circuit precedent guides questions of personal jurisdiction. *NexLearn LLC v. Allen Interactions, Inc.*, 859 F.3d 1371 (Fed. Cir. 2017).  "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process."  *Nuance Commcn's, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010) (citation omitted).  The Texas long-arm statute is co-extensive with federal Due Process requirements.  *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009).

Under the Due Process Clause, there are "two categories of personal jurisdiction that a court may exercise"—general and specific. *Daimler*, 571 U.S. at 126. Absent exceptional circumstances, general jurisdiction only exists in a corporation's "place of incorporation and principal place of business." *Id.* at 139, n.19.[6]

Specific jurisdiction, on the other hand, exists when "the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* at 127. "The Federal Circuit applies a three prong test to determine if specific jurisdiction exits: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commcn's*, 626 F.3d at 1231. The plaintiff has the burden of proving the first and second prong, at which point "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).

"[A]ttenuated evidence [that] does not show that the [forum State] was a target market" is insufficient. *NexLearn*, 859 F.3d at 1379. Rather, "[s]omething more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State." *Id.*

### B.    Failure to State a Claim

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires that a plaintiff "plead[]

---

[6] The Fifth Circuit has stated that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" of a defendant. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.  The plaintiff's complaint must contain "more than labels and conclusions"—not merely a "formulaic recitation of the elements of a cause of action. . . ." *Twombly*, 550 U.S. at 555.  Legal conclusions couched as factual allegations need not be accepted as true. *Id.* at 556.  "In other words, a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Bot M8*, 4 F.4th at 1352.

In a patent infringement case, the complaint must notify the alleged infringer of "what activity . . . is being accused of infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).  However, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353.  Indeed, the "failure to allege facts that plausibly suggest a specific element or elements of a claim have been practiced may be fatal in the context of a motion to dismiss." *In re Bill of Lading Transmission and Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012).  A patentee may also subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims. *Bot M8*, 4 F.4th at 1346.

### C.    Improper Service

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  The plaintiff "must bear the burden of establishing its validity" when the defendant challenges the validity of service. *See Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981).

A foreign corporation must be served as prescribed in Fed. R. Civ. P. 4(h).  Rule 4(h)(2) states that foreign service must be performed as specified in Rule 4(f), which includes "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).  Rule 4(f)(3) permits a party to use an alternative method of service "as the Court orders," so long as it is "not prohibited by international agreement."

The Hague Convention states that "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (quoting Hague Convention, 20 U.S.T. at 362).  "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies."  *Id*.

Fed. R. Civ. P. 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Fed. R. Civ. P. 12(b)(5) permits dismissal of the complaint based on "insufficient service of process."

## V.    ARGUMENT

### A.    This Court Does Not Have Personal Jurisdiction Over Airwallex Singapore

#### 1.    Airwallex Singapore is Not Subject to General Jurisdiction Because it is Not At Home in Texas

Airwallex Singapore cannot be subject to general jurisdiction because it is both incorporated, and has its principal place of business, abroad.  *Daimler*, 571 U.S. at 128-29.

Nonetheless, Plaintiff alleges—without supporting evidence—that Airwallex Singapore has "continuous and systematic business contacts with the State of Texas." Dkt. 1 ¶ 6. However, Airwallex Singapore has no contacts with Texas at all, and certainly none that are "continuous and systematic."

Airwallex Singapore is located in Singapore and incorporated under Singapore laws. Decl. ¶ 3; see also Dkt. 1 ¶ 2. It has no physical locations in the United States (let alone Texas), and does not rent or own any land or physical property in Texas. Decl. ¶ 4. Airwallex Singapore is not licensed or registered to conduct business anywhere in the U.S., let alone Texas. *Id.* ¶¶ 5, 12. Specifically, Airwallex Singapore (i) has no employees anywhere in the U.S., (ii) is not incorporated anywhere in the U.S., (iii) has no headquarters or offices anywhere in the U.S., and (iv) does not have a telephone number in the United States. *Id.* ¶ 5. Airwallex Singapore does not manage or operate the website https://www.airwallex.com/us. *Id.* ¶ 13.

Accordingly, since Airwallex Singapore has "no actual physical presence" in Texas, it cannot be subject to general jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009). Airwallex Singapore is manifestly not "at home" in this forum and Plaintiff does not attempt to show otherwise. *Daimler*, 571 U.S. at 127.

       **2.     Airwallex Singapore is Not Subject to Specific Jurisdiction Because it has No Minimum Contacts with Texas**

Plaintiff cannot satisfy its burden of demonstrating that Airwallex Singapore has purposefully directed any activities arising out of or relating to the alleged infringement in the Eastern District of Texas. Effectively all of Plaintiff's allegations are based upon "information and belief," are conclusory legal recitations, and need not be controverted. *Panda Brandywine*,

11

253 F.3d at 869. Nonetheless, Airwallex Singapore's declaration of Justin Yek, a director of Airwallex Singapore, provides factual evidence confirming that personal jurisdiction is improper.

First, Plaintiff's allegations regarding Airwallex Singapore's alleged infringement in this District are devoid of factual basis and are contradicted by declaration. Plaintiff alleges "[u]pon information and belief," that Airwallex Singapore "has committed acts of infringement in this District by, among other things, offering to sell and selling products that infringe the asserted patents[.]" Dkt. 1 ¶ 7. No information corroborating that allegation exists, and any such belief is not grounded in fact; the allegation is utter fiction. Airwallex Singapore has never made, sold, offered for sale, or imported the accused FX Platform into Texas or anywhere in the United States. Decl. ¶ 9. The accused FX Platform is not generally accessible to the public in Texas. *Id.* ¶ 10. No portion of the accused FX Platform is located in Texas, and none of Airwallex Singapore's customers are incorporated or headquartered in the United States, let alone Texas. *Id.* ¶¶ 10, 11.

Second, publicly-available information confirms that a *different entity* is licensed in Texas to perform the transactions that appear to be accused. Financial transactions are highly-regulated in the United States. But Airwallex Singapore is not registered to do business in Texas or anywhere in the United States. Decl. ¶¶ 5, 12. Airwallex US is the only entity licensed by the Texas Department of Banking as a money transmitter, not Airwallex Singapore (*see, e.g.,* https://www.airwallex.com/us/state-licenses). *Id.* ¶ 12. Simply put, only Airwallex US has license and registration to do business in Texas, including to execute financial transactions in Texas that appear to be accused in this action. To that effect, U.S. customers contract with *Airwallex US* in order to obtain access to, and use, the accused FX Platform in the United States. *Id.* Accordingly, Airwallex Singapore does not serve the Eastern District of Texas.

Third, Plaintiff has failed to allege any purposeful direction that would satisfy minimum contacts. Plaintiff alleges, "[u]pon information and belief," that Airwallex Singapore "directly or indirectly, participates in the stream of commerce that results in products, including the accused products, being made, used, offered for sale, and/or sold in the States of Texas and/or imported into the United States to the State of Texas." Dkt. 1, ¶ 7. However, even if this allegation possessed a factual basis (which it does not), Federal Circuit law requires more purposeful direction to Texas to satisfy minimum contacts. In *NexLearn*, 859 F.3d at 1379, the Federal Circuit rejected the notion that a defendant's website, which included a drop-down to generally sell offerings throughout all U.S. states, was sufficient to establish minimum contacts with Kansas specifically (the forum state). "*Something more is needed*—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State." *Id.* (emphasis added). "[A]ttenuated evidence [that] does not show that the [forum State] was a target market" is insufficient. *Id.* at 1379. Here, Plaintiff has offered *no evidence* in the Complaint that Airwallex Singapore has ever sold or provided the accused product in or into Texas. To the contrary, Airwallex Singapore has made no sales in Texas, and has not targeted any product marketing into Texas. Decl. ¶¶ 9-12. Thus, Plaintiff's allegations lack any factual basis, and in any event fail to satisfy "something more" necessary to establish that Airwallex Singapore purposefully directed any activities toward Texas.

Airwallex Singapore also cannot satisfy the stream of commerce theory because it does not make or sell physical products anywhere in the world, and has therefore never sold any physical products in or into Texas. Decl. ¶ 7. The Supreme Court defines the "stream of commerce" as "the movement of *goods from manufacturers* through distributors to consumers." *J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (emphasis added). The Federal Circuit likewise

acknowledged that the stream of commerce theory applies to the "flow of *products from manufacture* to distribution to retail sale." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (emphasis added). As a result, Plaintiff's stream of commerce theory necessarily fails. *Celgard LLC v. SK Innovation Co.*, 792 F.3d 1373, 1382 (Fed. Cir. 2015) (affirming dismissal for lack of personal jurisdiction where there was no evidence that "*products* actually enter[ed] the forum state") (emphasis added); *Tech. Pats. LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 915 (D. Md. 2008) ("The Court notes that in order for the 'stream of commerce' theory to apply, there must be an actual *product* placed into the stream of commerce.") (emphasis in original), *aff'd sub nom. Tech. Pats. LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482 (Fed. Cir. 2012).

Fourth, this Court previously granted a motion to dismiss for lack of personal jurisdiction on facts relevant here in *TriOptima AB v. Quantile Tech. Ltd.* 2020 WL 11613655, at *1 (Gilstrap, J.). In *Quantile*, the plaintiff accused a foreign entity's financial derivatives compression platform of infringing patents in Texas. *Id.* But Quantile's "dashboard" was only available to its customers and inaccessible to the public. *Id.* at *4. Such is the case here. Decl. ¶ 10. The Court found that under the Federal Circuit *NexLearn* decision, "something more" was lacking to satisfy minimum contacts with Texas. *Id.* at *5. Notably, the Court found that "[plaintiff] has not provided any evidence that any of Quantile's customers who have access to the Dashboard are based in, or reside in Texas, or even that anyone in Texas has access to the Dashboard." *Id.* This is because "Quantile's customers in the United States are comprised of mainly financial institutions" headquartered in places like New York—not Texas. *Id.* The present case goes even further than *Quantile*—none of Airwallex Singapore's customers are even headquartered or incorporated in the United States, let alone Texas. Decl. ¶ 11.

Accordingly, Airwallex Singapore has no minimum contacts with Texas. Plaintiff's allegations are conclusory and controverted by declaration. Prongs one and two for the test for specific personal jurisdiction must fail.

### 3. Personal Jurisdiction in Texas Over Airwallex Singapore Would be Unreasonable and Unfair

It would be unreasonable and unfair to subject Airwallex Singapore—a Singapore entity located solely in Singapore—to personal jurisdiction in Texas. The Due Process Clause forbids a court from exercising personal jurisdiction over a defendant under circumstances that "offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987).

It is unreasonable to require Airwallex Singapore to defend a suit in the Eastern District of Texas. Airwallex Singapore has no physical locations in Texas, and does not rent or own any land or physical property in Texas. Decl. ¶¶ 3, 4. It is not licensed or registered to conduct business in Texas *Id.* ¶¶ 5, 12. Airwallex Singapore has no customers headquartered or incorporated in Texas. *Id.* ¶ 11. In fact, an altogether different entity—Airwallex US—is the only entity with license and registration to transact in Texas relating to the accused FX Platform. *Id.* ¶ 12.

The burden on Airwallex Singapore in defending Plaintiff's claims in Texas is severe. It is located in Singapore and organized under Singapore laws—*nearly 10,000 miles away* from the Courthouse in Texas, with a time difference of 14 hours and a travel time to Texas of likely over 20 hours.[7] Decl. ¶ 3. None of Airwallex Singapore's evidence or witnesses are located in Texas,

---

[7] The Court may take judicial notice of the distance between a party and the District. *See, e.g.*, *Hutchings v. MSHC Bonner St. Plaza LLC*, No. 2:12-CV-00074-JRG-RSP, 2012 WL 3150824, at *2 (E.D. Tex. Aug. 2, 2012).

but rather are in Singapore, and significant costs would be incurred traveling between these locations. *Id.* ¶ 5.

As a foreign entity, Airwallex Singapore faces "unique burdens placed upon one who must defend oneself in a foreign legal system[.]" *Asahi*, 480 U.S. at 114. Submission to a foreign nation's judicial system has "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.*; *see also Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1074 (5th Cir. 1990). Exercising personal jurisdiction in the Eastern District of Texas forces the burden upon Airwallex Singapore to undertake costly U.S. discovery half a world away from its actual location. This fundamental unfairness weighs heavily against personal jurisdiction in this district and this case should be dismissed.

### B.      The Complaint Does Not State a Claim for Patent Infringement

#### 1.      The Complaint is Devoid of Specific Factual Allegations of Infringement

The Court should dismiss Plaintiff's Complaint under Rule 12(b)(6) because it fails to plausibly allege infringement of any Asserted Patent. The Complaint accuses products vaguely identified as "FX & Transfers platforms and systems . . . including all augmentations to these platforms or descriptions of platforms" as infringing all four Asserted Patents. Dkt. 1 ¶ 30. The Complaint provides one single screenshot from an Airwallex US website referencing "[f]ast, cost-effective international money transfer services," but lacks any further description of what specific services, method steps, hardware or functionality allegedly cause infringement. *Id.* The Complaint makes no attempt to link any portion of this sole screenshot to any portion of the patent claims in a manner that would identify *what* exactly is being accused of infringement, or *how* infringement is plausibly occurring.

16

Plaintiff does not offer a single factual allegation in the Complaint for how *any* product compares to *any* portion of *any* patent claim. The Complaint's only effort to explain infringement simply parrots portions of the asserted claims and ignores large sections of claim language for every asserted claim. Dkt. 1, ¶¶ 35, 51, 67, 83. For example, Plaintiff's allegations for the '107 Patent (*id.*, ¶ 35) ignore *all* of the following claim elements:

> determining in the trading server a prevailing exchange rate between the preferred currency and the market currency, wherein the prevailing exchange rate is derived from all exchange rates obtained from the one or more currency exchange servers when the asset is displayed in the preferred currency; and

> displaying all costs and fees in the preferred currency to own or sell the asset, wherein the all costs and fees are dynamically changed in accordance with the prevailing exchange rate updated constantly even when a market value of the asset remains unchanged, wherein the trader has certain knowledge of what to pay for the asset, or profit or loss when acting on the asset.

*See* '107 Patent at 8:58-9:4. While an element-by-element analysis of the claims is not required, this Complaint should be dismissed because it does not support plausible "entitlement to relief with 'factual content,'" and instead provides mere "conclusory allegations that the accused product(s) meet [fewer than] every claim limitation." *Bot M8*, 4 F.4th at 1353.

### 2. Plaintiff's Complaint Does Not Make Out a Plausible Claim

To state a claim, "a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *2-4 (E.D. Tex. Jun. 28, 2016) (dismissing, finding that plaintiff "plainly fails to state a claim for relief that is plausible on its face"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Core*

*Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-751-JDL, 2015 WL 5000397, at \*4 (E.D. Tex. Jun. 3, 2015).

Here, the Complaint simply claims that Airwallex Singapore "makes, sells, advertises, offers for sale, uses, or otherwise provides an apparatus and method for a consolidated trading platform covered by the Patents-in-Suit, including its FX & Transfers platforms and systems[.]"[8] Dkt. 1 ¶ 30. This is supported by nothing more than a single screenshot.

Plaintiff's sole screenshot—which simply identifies "[f]ast, cost-effective international money transfer services" (Dkt. 1 ¶ 30)—fails to provide *any* clarity on what specific activity is being accused of infringement, or how infringement is plausible. The *Chapterhouse, LLC v. Shopify, Inc.* case is highly relevant to Plaintiff's deficiencies, where this Court dismissed a complaint when the plaintiff failed to allege *how* any screenshots plausibly met the asserted claim language—even where *multiple* screenshots were provided. No. 2:18-CV-00300-JRG, 2018 WL 6981828, at \*2 (E.D. Tex. Dec. 11, 2018) (Gilstrap, J.). Specifically:

> The Court disagrees with Plaintiff that the screenshots themselves constitute the requisite factual allegations. While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.

*Id.* Here, Plaintiff's Complaint provides far less than *Chapterhouse*. The Complaint offers *one single screenshot* across four Asserted Patents, and never relates any aspect of the screenshot to any portion of any claim of any Asserted Patent.

---

[8] What is specifically meant by "FX & Transfers platforms and systems" is vague and undefined. Plaintiff's use of the word "including" compounds the vagueness of these allegations, as Plaintiff appears to potentially accuse other products and services more broadly, without making any effort to identify those products.

### 3.    The Complaint Improperly Parrots Claim Language

Plaintiff's only effort to address *how* the claims of the Asserted Patents are plausibly infringed is found in Dkt. 1, ¶¶ 35, 51, 67, 83.  But these allegations provide no notice of how Airwallex Singapore is believed to plausibly practice any element of any asserted claim.  For the handful of claim elements addressed, the Complaint simply parrots the claim language (albeit incompletely).  But that, without additional factual support, is insufficient to state a patent infringement claim.  *Chapterhouse*, 2018 WL 6981828, at *2 (holding that claim language "on its own" without "accompanying factual allegations" are insufficient to meet the *Iqbal/Twombly* pleading standard).  By offering a single screenshot, failing to allege any relationship of that screenshot to the claims, parroting the claims, and ignoring large swaths of claim language across multiple patents, Plaintiff's Complaint is far more deficient than *Chapterhouse*.

Plaintiff's deficiencies are highlighted where, as here, "cases involving more nebulous, less tangible inventions such as computer software methods require a greater degree of specificity to put the defendant on notice."  *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34-LED-JDL, 2011 WL 13223466, at *3 (E.D. Tex. Sept. 29, 2011).  By Plaintiff's admission, the Asserted Patents relate to methods and systems for "conducting security transactions in a preferred currency" using a "three-tier architecture which includes a brokerage, a market exchange where the securities/assets are traded, and a currency exchange where amounts in one currency can be converted to corresponding amounts in another currency at prevailing rates."  Dkt. 1, ¶¶ 17-18.  However, Plaintiff vaguely alleges that unspecified "FX & Transfers platforms and systems . . . including all augmentations to these platforms or descriptions of platforms" constitute the accused product.  *Id.* ¶ 30.  Plaintiff's allegations are exactly the kind of "vague identification" that warrants dismissal.  *Realtime Data LLC v. Stanley*, 721 F. Supp. 2d

538, 543 (E.D. Tex. Jun. 10, 2010) (dismissing, finding "data compression products and/or services" to be a "vague identification"); *see also Landmark Tech LLC v. Aeropostale*, No. 6:09-CV-262, 2010 WL 5174954, at \*3 (E.D. Tex. Mar. 29, 2010) (dismissing, finding "electronic commerce systems" to be "an extremely vague identification").

### 4.    Plaintiff's Own Allegations are Inconsistent with Infringement

In addition to Plaintiff's failure to plead a plausible infringement claim, it alleges details that are actually *inconsistent with* a finding of infringement.  Despite pleading that the Asserted Patent claims are all directed to a "consolidated trading platform" that conducts "security transactions" (Dkt. 1, ¶¶ 7-19, 26, 30), Plaintiff's cited description of the accused products is *not* related to any form of trading service or security transaction.  Instead, Plaintiff simply identifies *a payment system* designed to "[s]treamline sending payments abroad to suppliers and employees around the world."  Dkt. 1, ¶ 30 (*see* Screenshot).  This screenshot is consistent with the fact that Airwallex Singapore does not even *offer* brokerage or securities trading and it is not an investing platform.  Decl. ¶ 7.  Accordingly, Plaintiff has done more than just fail to plausibly allege a cause of action—it has affirmatively pled facts that are *inconsistent* with infringement of its own patents, making dismissal all the more warranted.  *Bot M8*, 4 F.4th at 1354 ("Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim.").

Plaintiff has woefully failed to satisfy its requirement for pleading facts sufficient to constitute a plausible claim for patent infringement and the Complaint should be dismissed.

### C.     Plaintiff Failed to Properly Serve Airwallex Singapore in the Manner Required for Foreign Corporations

The Court should separately dismiss Plaintiff's Complaint for insufficient service of process, or in the alternative should quash service because Plaintiff failed to properly serve the summons and Complaint on Airwallex Singapore.  As an initial matter, the plaintiff that purportedly served Airwallex Singapore was "Infogation Corporation" not "Intercurrency Software," which does not constitute service by the Plaintiff under the plain language of Rule 4.

But even if it did, Plaintiff cannot carry its burden to prove that service on a registered agent of a *different* entity that is neither a parent nor a subsidiary of Airwallex Singapore— Airwallex US via CT Corporation—complies with the procedures required under the Hague Convention.  Furthermore, Plaintiff has not and cannot establish that the relationship between Airwallex Singapore and Airwallex US is so closely intertwined as to compel this Court to conclude that Airwallex US (located in California) somehow serves as Airwallex Singapore's "general manager" under California law.  Plaintiff should not be allowed to circumvent well-established international, federal, and state procedures to compel a foreign company to appear in court across the world based on effecting service upon a different entity.

### 1.     Plaintiff's Service on Airwallex Singapore Through Airwallex US was Defective Because it Failed to Follow the Hague Service Convention

Singapore signed the Hague Convention on May 16, 2023, and the Convention entered into force in Singapore on December 1, 2023.[9]  Because Airwallex Singapore is located in Singapore and organized under Singapore laws, Plaintiff had to serve its Complaint and summons through the Hague Convention.

---

[9] *See* Hague Conference on Private International Law*, Singapore Accedes to the Service Convention* (May 16, 2023), https://www.hcch.net/en/news-archive/details/?varevent=91.

It is undisputed that Plaintiff made no attempt to serve Airwallex Singapore according to the procedures of the Hague Convention. Rather, the proof of service filed by Plaintiff indicates that service was made on CT Corporation—*Airwallex US's* registered agent for service of process in California. Dkt. 4. Plaintiff labeled this service on Airwallex Singapore "c/o Airwallex US, LLC." *Id.* Plaintiff's failure to attempt proper service, and failure to seek leave to employ substitute service, justifies dismissal. *See, e.g., Traxcell Techs. LLC v. Nokia Sols. and Networks US LLC*, No. 2:18-CV-00412-RWS-RSP, 2019 WL 8137134, at *3 (E.D. Tex. Oct. 22, 2019) (dismissing, because "[t]he Court concludes that [plaintiff] must comply with the Hague Convention to effect service, and [plaintiff] has not shown that it has complied with the Hague Convention").

## 2. Plaintiff's Service on Airwallex Singapore "c/o Airwallex US, LLC" is Defective Under California Law

The only conceivable remaining basis for adequate service of process on Airwallex Singapore is the prospect that Airwallex US serves as Airwallex Singapore's "general manager" under Cal. Code. Civ. P. § 416.10. Such a designation is not remotely appropriate. Indeed, the Complaint lacks *any* allegations regarding a relationship between Airwallex Singapore and Airwallex US that would satisfy this standard. To the contrary, Airwallex US and Airwallex Singapore are separate companies that maintain separate books and accounting and file taxes separately. Decl. ¶ 14. Airwallex Singapore and Airwallex US do not possess a parent or subsidiary corporate relationship. *Id.*

California courts have generally interpreted the "general manager of a corporation" as "one who has general direction and control of the business of the corporation as distinguished from one who has the management only of a particular branch of the business." *Gen. Motors Corp .v. Super.*

*Ct.*, 15 Cal. App. 3d 81, 85-86 (1971).  In contrast, Airwallex Singapore does not control the day-to-day operations of Airwallex US.  Decl. ¶ 14.  Moreover, Plaintiff does not explain how the relationship between Airwallex Singapore and Airwallex US involves efforts to market, sell, or distribute products beyond vague generalizations, nor does it describe how any such efforts are directed at California.  This is clearly insufficient to establish that Airwallex US serves as Airwallex Singapore's general manager in California.  *See, e.g.*, *Thomas v. Takeda Pharms. USA, Inc.*, No. 1:16-CV-01566-LJO-EPG, 2017 WL 2214956, at *5 (E.D. Cal. May 19, 2017) (holding that a "general manager" designation would "undercut[] the general rule that subsidiaries and parent corporations are separate entities").  Indeed, Plaintiff's Complaint alleges far less than *Takeda Pharms*.

Because there is no factual basis to find that Airwallex US is a general manager of Airwallex Singapore, the Complaint should be dismissed under Rule 12(b)(5).

### 3.      Plaintiff's Pattern of Avoiding Proper Service Warrants Dismissal

In order for a district court to control its docket, dismissal is authorized "when the court determines in its discretion that the plaintiff has not demonstrated reasonable diligence in attempting service."  *Traxcell*, 2019 WL 8137134, at *4 (quoting *Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012)).  In fact, this Court recently dismissed a case by this same Plaintiff where it attempted to serve a foreign defendant based in a country that is a signatory to the Hague Convention through the Texas Secretary of State.  *Intercurrency Software LLC v. Foris DAX Asia Pte. Ltd.*, No. 2:23-cv-00361-JRG (E.D. Tex.), Dkt. 24.

Dismissal is particularly appropriate here because Plaintiff has a pattern of ignoring service requirements on foreign defendants.  Plaintiff has been aware of its Hague Convention obligations long before filing this case.  In *Foris DAX Asia*, Plaintiff simply *withdrew* its certificate of service

rather than defend the propriety of its service.  Despite this, Plaintiff continues the same conduct of improper service in cases filed against other foreign entities such as Wise PLC, among many others.  *See, e.g.*, *Intercurrency Software LLC v. Wise PLC*, No. 2:24-cv-00976-JRG (E.D. Tex.). As this Court cautioned Plaintiff in *Foris DAX Asia*:  "Plaintiff is represented by counsel and such counsel has filed numerous lawsuits in this Court.  Counsel should know how to practice in this Court in compliance with the Federal Rules of Civil Procedure."  No. 2:23-cv-00361, Dkt. 24, at *3 (Gilstrap, J.).  The same concerns apply here, and are magnified given Plaintiff's prior warnings.

Accordingly, Plaintiff's Complaint should be dismissed for improper service.

## VI.   CONCLUSION

Based on the foregoing, Airwallex Singapore respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice because (i) this Court lacks personal jurisdiction over Airwallex Singapore; (ii) Plaintiff fails to state a plausible claim for patent infringement, and (iii) Plaintiff has not properly served Airwallex Singapore.

Dated: March 31, 2025

<u>/s/   Geoffrey P. Culbertson</u>
Geoffrey P. Culbertson
Texas Bar No. 24045732
Kelly B. Tidwell
Texas Bar No. 20020580
PATTON TIDWELL & CULBERTSON LLP
2800 Texas Boulevard
Texarkana, TX 75503
Telephone: (903) 792-7080
Email: gpc@texarkanalaw.com
          kbt@texarkanalaw.com

B. Clayton McCraw (admitted *pro hac vice*)
Nan Zhang (admitted *pro hac vice*)
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Email: cmccraw@mayerbrown.com
          nzhang@mayerbrown.com

*Attorneys for Defendant Airwallex (Singapore)
Pte. Ltd.*

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on March 31, 2025.

*/s/ Geoffrey P. Culbertson*
Geoffrey P. Culbertson